UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-7344

UNITED STATES OF AMERICA,

Plaintiff – Appellant,

v.

KENNETH ROBINSON, a/k/a Bear,

Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore. J. Frederick Motz, Senior District Judge. (1:11-cr-00521-JFM-1; 1:14-cv-02968-JFM)

Argued: May 9, 2017                          Decided: June 23, 2017

Before WILKINSON, TRAXLER, and AGEE, Circuit Judges.

Reversed and remanded with instructions by unpublished per curiam opinion.

**ARGUED:** Jason Daniel Medinger, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellant. Charles N. Curlett, Jr., LEVIN & CURLETT LLC, Baltimore, Maryland, for Appellee. **ON BRIEF:** Rod J. Rosenstein, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellant. Steven H. Levin, Sarah F. Lacy, LEVIN & CURLETT LLC, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury convicted Kenneth Robinson of possessing with intent to distribute 280 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1). He was sentenced to 240 months imprisonment. Robinson appealed and we affirmed. *See United States v. Robinson*, 580 Fed. App'x 239 (4th Cir. 2014). Presently before the court is Robinson's motion under 28 U.S.C. § 2255, asserting that his defense counsel was constitutionally ineffective when he advised Robinson not to testify at trial. The district court initially denied the motion, but later vacated its order, reopened the case, and granted the motion. The government appeals. After a thorough review of the record, we reverse the district court's judgment granting Robinson's § 2255 motion and remand with instructions to deny the motion.

I.

In January 2011, law enforcement officers in Baltimore, Maryland, began investigating Robinson's connection to illegal drug trafficking. The investigation led to the execution of a search warrant for Robinson's residence and personal vehicle. Upon entering the home, officers found Robinson, his fiancée Antonia Powell, and two young children. After Robinson was advised of his *Miranda* rights, Sergeant Herzog and Sergeant Cooper questioned him. When Sergeant Herzog asked Robinson where he stored his illegal drugs, Robinson looked down and responded, "It's all in the basement ceiling." J.A. 34. Sergeant Herzog contemporaneously recorded Robinson's statement in the investigation notes. Robinson also said "that there was a bag of money by the

2

steering wheel" in his vehicle. J.A. 36. Sergeant Cooper advised the officers executing the search warrant of the information they had obtained from Robinson.

The search of Robinson's basement ceiling produced a large quantity of crack cocaine and approximately $32,000 in cash. The crack cocaine found in the ceiling was moist, indicating that it had been recently cooked and was in the process of drying out. Officers also found a scale containing crack cocaine residue and a hot plate under the basement stairs. The officers also searched Robinson's bedroom, which he shared with Powell. Among other personal items, the officers found a pair of green men's cargo shorts which contained Robinson's wallet, his identification card, a key to the vehicle that he drove, and four individually-wrapped packages of crack cocaine. Using the key found in the shorts, officers entered Robinson's vehicle and discovered a Crown Royal bag containing $3,600 hanging next to the steering wheel.

Robinson was subsequently transported to the police station, where he was interviewed by Detective Goertz in the presence of Sergeant Herzog. When Detective Goertz asked Robinson "what he was doing with so much drugs," Robinson told the officers that he was "a hardhead" and admitted that he was "a drug dealer." J.A. 57.

Near the close of the Government's case, defense counsel informed the court that he believed that Powell would be his only witness. The Government then informed the court that Robinson had two prior convictions that could be used for impeachment purposes -- one for possession with intent to distribute narcotics and the other for conspiracy to commit first-degree murder. Defense counsel suggested that the prejudice of such evidence would outweigh its probative value and that the ultimate decision as to

3

whether Robinson would testify would likely depend on the ruling by the court with regard to the admissibility of the prior convictions. The court indicated at that time that the drug-distribution conviction would be admissible as impeachment evidence and that, while the murder conviction probably should be admitted as well, it would not be allowed. The Government then presented the testimony of its sole remaining witness, a chemist who confirmed that the substances found in Robinson's home were crack cocaine.

As anticipated, Robinson called Powell to testify. Powell testified that Robinson engaged in a number of legitimate vocations that required him to deal with significant quantities of cash -- buying and selling automobiles at auction, selling snowballs for B's Polar Bear Snowball, and renting property. Powell also testified that her sister and her sister's children were living in the home at the time that it was searched. Powell testified that her sister had a boyfriend, DeAngelo, who visited often but never stayed the night. Powell did not know DeAngelo's last name, but she described him as "flashy," meaning that he always had new cars, new clothes, and jewelry. J.A. 209. Powell claimed that the contraband-laden shorts found in her bedroom belonged to DeAngelo, and that the shorts must have become mixed in with her family's laundry after DeAngelo had changed clothes at the house on an earlier occasion. Powell also testified that the shorts would have been too small for Robinson to wear at the time of his arrest and that, in any event, Robinson refused to wear the color green.

On cross-examination, Powell admitted that she never assumed that DeAngelo was a drug dealer and never mentioned to the police that the drugs found in their home

4

might belong to DeAngelo. Powell testified that it did not occur to her that DeAngelo might have dealt drugs until after the search and after DeAngelo was murdered. Powell could not explain why Robinson's wallet and keys were in the green shorts.

Following Powell's testimony, Robinson's counsel asked for a recess to discuss with Robinson whether he would testify. At that point, the district court *sua sponte* raised the issue of the admissibility of Robinson's murder conviction in light of Powell's testimony, stating that the court was now "inclined" to let the government use it for impeachment as well. J.A. 239. The district court explained that the jury might find Powell's testimony dubious, and it was concerned that the jury might hear corroborating testimony from Robinson without the benefit of knowing Robinson's complete criminal record. In sum, the district court believed that Robinson might be putting on a "false defense" and that, while it was ultimately up to the jury to make that determination, the considerations underlying the question of whether the murder conviction was unfairly prejudicial had changed. J.A. 238. Without further objection or comment, defense counsel declared that, in light of the district court's rulings as to the likely admissibility of the prior convictions, Robinson would not take the stand. Robinson confirmed the same. The jury thereafter convicted Robinson.

On direct appeal, Robinson argued that the district court erred when it rendered its "*in limine* determination that, should he testify, his prior conviction for conspiracy to commit murder would likely be admissible to impeach his credibility." *Robinson*, 580 Fed. App'x at 239. Robinson argued that the district court had "appli[ed] the wrong balancing test" and that, as a result, "he was unconstitutionally forced to choose between

5

exercising his right to testify and receiving a fair trial." *Id.* However, because Robinson had declined to testify, we held that he had forfeited these issues on appeal. *See id.; see also Luce v. United States*, 469 U.S. 38, 43 (1984) (holding that "to raise and preserve for review [a] claim of improper impeachment with a prior conviction, a defendant must testify").

Robinson thereafter filed his petition for federal habeas relief under 28 U.S.C. § 2255, asserting that defense "[c]ounsel was ineffective for telling me that if I was to get on the stand I would lose [the] trial and direct appeal," J.A. 327, 383, because "it would allow the . . . Government to bring up a murder conviction, *and* . . . the prior drug conviction . . . to impeach him," J.A. 377 (emphasis added). On September 14, 2015, the district court denied Robinson's motion as "entirely without merit." J.A. 396. The district court observed that it had "tentatively" ruled that "the murder conviction [could] come in," and that "Robinson was charged with a drug offense, and the fact that he had been previously convicted for a drug distribution offense certainly would have been detrimental to his case." J.A. 396 (internal quotation marks omitted).

For reasons that are unexplained in the record, however, the district court rescinded its order and reopened the case on September 22, 2015. Approximately one month later, Robinson's newly-obtained counsel filed a supplement to the § 2255 motion, asserting for the first time that defense counsel had been ineffective because counsel was unaware of the Supreme Court's decision in *Luce* and its effect upon Robinson's appellate rights when defense counsel advised Robinson not to testify. In support, Robinson submitted an affidavit from defense counsel. According to defense counsel,

6

"Robinson was adamant that he wanted to testify," notwithstanding the fact that both of his prior convictions would likely be admissible for impeachment purposes, because Robinson wanted to "counter the government's allegation that he had admitted to being a 'drug dealer,'" "explain how he obtained cash, and [explain] how the drugs in the house were not his." J.A. 414-15. However, when "the [c]ourt altered its decision" on the murder conviction to allow the government to use it for impeachment, counsel "belie[ved] that this was error on behalf of the Court and that if Mr. Robinson was convicted, that this was an appealable issue that could warrant the overturning of his conviction." J.A. 415. As a result, defense counsel "advised Mr. Robinson to not testify," but "did not . . . advise Mr. Robinson that by not testifying he would be waiving his right to testify," because he "was unaware of the United States Supreme Court's decision in *Luce*." J.A. 415.

## II.

The Sixth Amendment requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence," U.S. Const. amend. VI, and that such assistance be effective, *see Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to establish a claim for ineffective assistance of counsel, Robinson was required to demonstrate "that counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Id*. at 687. To demonstrate inadequate performance, Robinson "must show that counsel's representation fell below an objective standard of reasonableness" measured by "prevailing professional norms." *Id.* at 688. To demonstrate prejudice, Robinson "must show that there is a reasonable

7

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Robinson argues that his defense counsel's performance was deficient because defense counsel was unaware that *Luce* would prohibit him from arguing on appeal that the district court erred in changing its ruling on the admissibility of Robinson's murder conspiracy conviction. The district court agreed that Robinson's defense counsel was ineffective because he gave advice that "was contrary to the holding in *Luce.*" J.A. 432. The district court, however, failed to address the second "prejudice prong" of *Strickland.* We review the district court's grant of a § 2255 motion based on ineffective assistance of counsel *de novo. See United States v. Poindexter*, 492 F.3d 263, 267 (4th Cir. 2007).

As an initial matter, we have concerns with the district court's ruling on *Strickland*'s deficient performance prong. Robinson's defense counsel did not object to the district court's "alteration" of its tentative decision regarding the admissibility of the murder conspiracy conviction, and Robinson's appellate counsel did not argue on direct appeal that the district court committed legal error when it did so, rendering some question as to whether it was the "alteration" that was the triggering event that changed Robinson's trial strategy as opposed to the impeachment ruling alone. Nevertheless, we need not definitively resolve this question of deficient performance, nor remand for further factual development on the first prong of *Strickland.* Even if we assume that defense counsel's representation fell below an objective standard of reasonableness, Robinson has clearly failed to demonstrate prejudice.

8

The evidence presented at trial against Robinson was overwhelming, and the evidence that Robinson claims he wanted to share with the jury was not only largely cumulative to that presented by Powell, it would have been more prejudicial to him.

Robinson admitted to two officers at his home that the crack cocaine would be found in the basement ceiling. Substantial quantities of recently-cooked crack cocaine were indeed found there. The substantial amount of hidden cash, which Robinson does not deny belonged to him, was also found in the basement ceiling. The officers found Robinson's wallet, identification, the key to the car that he drove, and four individually-packaged amounts of crack cocaine in a pair of cargo shorts lying on the floor of his bedroom. Robinson also pointed officers to the location of a large sum of cash in his vehicle, which was opened with the key that was found in the shorts. Robinson admitted to two officers at the police station that the crack cocaine found in his home belonged to him and, in an apparent reference to his prior drug distribution conviction, Robinson admitted that he had the large amount of drugs because he was a "hardhead" and "a drug dealer." J.A. 57.

On appeal, Robinson proffers that he would have denied making these incriminating statements to the police officers, that he would have denied having crack cocaine at his house, and that he would have explained that the large sums of cash hidden in the basement ceiling of his house, as well as in his car, were derived from his legitimate businesses and not from drug dealing. Presumably, he would have also denied ownership of the green shorts. However, Powell, who resided in the home and shared the bedroom with Robinson, had already testified in detail about Robinson's purported

9

legitimate businesses. She had testified that the shorts did not belong to Robinson, and she offered an explanation as to how the shorts had gotten into the laundry. And she, unlike Robison, was able to convey all of this information to the jury without the jury being made aware that Robinson had previously been convicted of a drug distribution offense, as well as of a murder conspiracy offense. At best, therefore, Robinson would have corroborated Powell's speculative testimony seeking to scapegoat the recently-deceased DeAngelo, as well as her testimony as to Robinson's purported legitimate businesses, and added summary denials that he made incriminating statements to three police officers. However, his testimony would have also elicited the extremely prejudicial evidence that he had been previously convicted of the prior offenses. In sum, the overwhelming evidence of guilt in the record, in conjunction with the incredible theory of defense that Robinson's testimony would have merely corroborated, and the prejudicial nature of the impeachable offenses allows for no reasonable probability that the jury's verdict would have been different if Robinson had testified.

## III.

Because Robinson's constitutional right to effective assistance of counsel was not violated, we reverse the district court's grant of Robinson's § 2255 petition and remand with instructions to deny the petition.

REVERSED AND REMANDED WITH INSTRUCTIONS